## HOUSTON POWELL *v.* THE STATE.

1. PRACTICE. — In the trial of a criminal case, when the facts have been proved which constitute the offence, it devolves upon the accused to establish the facts on which he relies to excuse or justify his acts.

2. EVIDENCE — EXCEPTIONS. — A bill of exceptions to the exclusion of evidence should set out the evidence, in order that the court may be enabled to judge of its materiality.

3. SAME — DECLARATIONS. — In a trial for murder, it being in proof that the deceased was a school-teacher, and was killed in his school-house, the accused proposed to prove his own declarations of his purpose in going to the school-house, expressed by him on his way there. *Held*, that such declarations were not *res gestæ*, and were not evidence for the accused.

4. CHARGE OF THE COURT. — In a trial for murder, the court below gave in charge to the jury the statutory definitions of murder in both degrees,

and of manslaughter; explained malice, both express and implied; gave the accused the benefit of the reasonable doubt, and of such special instructions as he asked on the law of self-defence. Accused, being convicted of manslaughter, claims that the court below erred in giving any charge on the law of that offence, and insists that the proof made a case which was either murder or self-defence, and that he was prejudiced by the charge on manslaughter. But *held*, in view of the evidence, that the appellant has no cause to complain of the charge. A conviction will not be set aside because the court below gave to the accused the benefit of a charge on a less degree of offence than the jury would have been warranted in convicting him of; nor because the jury, in view of mitigating circumstances, were unwilling to convict for the greater offence.

Appeal from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

The indictment was for the murder of John A. Smith, a school-master, and, as will be seen in the opinion, it impleaded three others besides the appellant. The conviction was for manslaughter.

It is disclosed by the evidence for the prosecution that the appellant, his brother James, John House, and William Burt, came to the deceased's school-house on the day of the killing, before school dismissed, and that, after the scholars had dispersed, firing was heard in the direction of the school-house. No one of the State's witnesses saw the shooting, but one saw the defendant's brother standing in the doorway of the school-house, and heard some one exclaim, "Give him h—l, boys!" None of the others heard this exclamation.

The witnesses Burt and House testified, for the defence, that they waited for defendant to see the deceased about whipping his brother, the day before, intending to accompany defendant home; that when defendant knocked at the school-house door, deceased told him to "come in;" to which defendant replied, "I want you to come out here." Deceased again invited defendant in, who, on entering, said to deceased, "I have come to see why you whipped my

brother so severely;" to which deceased replied, "I do not think I whipped him severely." Defendant said, "If you don't think so, I will show you his back;" and deceased answered, "I do not want to see it." Defendant then said, "I believe the law will take hold of you for it, and I will prosecute you for it." Deceased said, "You had better do it now, then." Defendant turned, facing the door, as though to go out, when deceased rose up and knocked him down with a chair. Defendant attempted to rise up, but when about half up deceased again knocked him down with the chair, when the firing commenced. Four shots were fired, only one of which was seen by witnesses, and that was from the neighborhood of the door.

*Miller & Sayers*, for the appellant. The State, after introducing its evidence, as shown by the statement of facts, rested, when defendant demurred to the evidence. The State joined issue on the demurrer to the evidence. If, then, after giving to the evidence any reasonable construction, it would not sustain a conviction, it was the duty of the court to sustain the demurrer. *Dangerfield* v. *Paschal*, 11 Texas, 581.

The evidence introduced by the State in this case failed to connect the defendant, Houston Powell, with the killing of Smith in any way whatever. It was shown that when the State's witnesses left the school-house he was out on the play-ground, and he is not shown to have ever returned to the house; nor is it shown that Smith was killed by the firing which was heard by the State's witness; nor, in fact, that Smith was killed until after dark of that day.

2. If it was not error to overrule the demurrer to the evidence, it certainly was error to permit the State's counsel to comment on this ruling to the jury in his closing argument, as shown by the fifth exception, in violation of the rules of court, and by which the jury were led to believe that

it was their duty to reject the testimony of defendant's witnesses, and that upon the testimony of the State's witnesses alone they were bound to find a verdict against defendant.

It was also apparent, from the former orders of the court discharging the defendants Burt and House, that there was other evidence by which the State could prove the facts in relation to the killing of Smith, and there was no reason why the defendant should have been required to make his defence until the State had made out a case against him, or had exhausted the evidence within its reach.

The fact that the defendant was, by this ruling of the court, compelled to introduce these witnesses, instead of the State, worked a serious injury to defendant; because, as shown by bill of exceptions, the State's counsel, in his closing argument, charged that there was a conspiracy between the defendant and these witnesses to take the life of the deceased, and thereby to induce the jury to disregard their evidence, and, in connection with the ruling on the demurrer, to lead the jury to believe they must convict on the evidence of the State's witnesses, as the judge had decided that it was sufficient, and defendant could not deny it.

The second error assigned is, that the court erred in refusing to permit the witness House to state what was said by defendant in relation to their object in going to the schoolhouse, while on the way. This, we submit, was a part of the *res gestœ*, and was relevant for the purpose of showing their intent in going there, and ought to have been admitted.

The third, fourth, and fifth errors assigned are for defects in the charge of the court. The charge is one of those general, stereotyped charges that might be given in every murder case in this State. It has no more reference to the facts in this case than to any other case, and fails to instruct the jury as to their duty in this particular case, and, therefore, does not comply with the requirements of the statute. *Sutton* v. *The State*, 41 Texas, 513 ; *Holden* v. *The State*,

1 Texas Ct. App. 225 ; *O'Mealy* v. *The State*, 1 Texas Ct. App. 180.

The charge is also incorrect in asserting that malice is to be implied in all cases of homicide, and its existence is to be presumed, etc. This we think clearly wrong, as an abstract proposition ; but when applied to the facts in evidence in this case, it is not only wrong, but is a direction to the jury to presume that there was malice, when every legal deduction from the evidence shows that the killing was not done upon any malice, but in self-defence.

While " malice " is a state of mind, yet it must be proved, or at least the external acts indicating this state of mind must be clearly established, — as, that the killing was done in a manner indicating a want of excuse for it.

This case, as developed by the evidence, was either a case of justifiable homicide or a case of murder. If the jury were at all warranted in rejecting the evidence of defendant's witnesses, then upon the evidence of the State's witnesses the defendant was guilty of murder or nothing. If the testimony of defendant's witnesses is taken into an account, it shows a case of justifiable homicide. Then, we think that the charge in reference to manslaughter was erroneous, and should not have been given.

It was held by this court, in *Williams* v. *The State*, 2 Texas Ct. App. 271, that when the proof showed that a case was either one of murder or of justifiable homicide, it would be erroneous for the district judge to charge upon manslaughter, as such a charge would be calculated to confuse and mislead the jury. See also *Pugh* v. *The State*, 2 Texas Ct. App. 539, and cases there cited.

While it is true that in these cases the objection was made by the defendant that the court did not give him the benefit of a charge upon manslaughter, yet that cannot change the law. The statute requires the court to charge the law applicable to the case, — no more and no less, —

and when either more or less than the very law applicable to the case is given as a charge by the district judge, can this court say that the defendant was not injured by it? He has not been tried according to the law of the land, as he had a right to be tried. It may be that the jury, under the instruction, have convicted the defendant of the minor offence, when they would have acquitted him of any greater one.

The bill of exceptions shows that the rules of practice were repeatedly and wantonly violated by the State's counsel on the trial of this case, in matters most material and essential to a fair hearing of his cause before the jury. These rules provide that the violation of them may be reserved by bill of exception, may be made the basis of a motion for a new trial, and may be assigned for error.

Now, if it was not intended that a palpable violation of these rules should be sufficient ground to reverse a cause, then they are all bombast and fustian, and had better be repealed. The rules were intended to secure a fair and impartial presentation of a cause before the court and jury, and the violations shown by defendant's bill of exceptions were those which directly involve the fairness of the presentation of his cause to the jury, and may in some measure account for the verdict.

All these errors were made part of the motion for a new trial, and we assign for error the overruling of the motion for new trial, and will only discuss one of the grounds in the motion, and that is that there was no evidence to sustain the verdict.

The testimony of the State's witnesses proved nothing against defendant, Houston Powell. The evidence of defendant's witnesses showed a clear case of justifiable homicide. There was no conflict in the evidence, — nothing to reconcile, no impeached or disputed evidence,— in fact, nothing upon which to predicate a quibble as to the credibility

of the defendant's witnesses, except the fact that they had been jointly indicted with the other defendants for this offence. But, to offset this, there is the solemn statement of the State's counsel, in the record, that there is no case against them. The verdict, therefore, can only be accounted for upon the general principle that seems now to obtain, viz.: that it is the duty of the petit jury to convict in all cases, and the duty of the district judge to uphold their decision.

*George McCormick*, Assistant Attorney-General, for the State.

Ector, P. J. The appellant, Houston Powell, was jointly indicted with James Powell, John House, and William Burt, in the District Court of Gonzales County, on October 1, 1875, for the murder of one John A. Smith, on June 10, 1875. On the application of the county attorney, a *nolle prosequi* was entered in the case as to the defendant William Burt, at the October term, 1877, of the court.

At the same term, on the application of James and Houston Powell, a severance was granted them, and the defendant John House was placed upon trial. After hearing the evidence, on motion of the county attorney, the court entered a *nolle prosequi* as to the defendant House. At the April term, 1878, of said court, James Powell asked for a severance from his co-defendant, Houston Powell, which was granted ; and Houston Powell was placed on trial, found guilty of manslaughter, and his punishment assessed at five years' confinement in the penitentiary, and the case was appealed to this court.

The appellant has assigned the following errors, to wit:

" 1. The court erred in overruling defendant's demurrer to the evidence, as shown by the statement of facts and bill of exceptions, for reasons shown in bill of exceptions.

" 2. The court erred in refusing to permit the witness John House to state what was said by defendants, Houston Powell and James Powell, on their way to the school-house, in relation to their object in going to the school-house, as shown by the exceptions reserved in the statement of facts.

" 3. The court erred in the instructions given to the jury, in this: that the charge is of such a general character that it might be given in any case where defendant was indicted for murder, and has no special reference to the case on trial, and does not instruct the jury as to this particular case.

" 4. The charge is also incorrect in asserting that malice is to be implied in all cases of homicide, and its existence is always to be presumed till the facts developed by the evidence show the killing to have been done in sudden passion. This part of the charge was not correct in law, and, as applied to the facts in this case, was well calculated to, and evidently did, mislead the jury.

" 5. The court erred in instructing the jury in reference to the offence of manslaughter, and in charging them that, under the evidence, they could find the defendant guilty of manslaughter, for reasons shown in defendant's bill of exceptions.

" 6. The court erred in permitting the State's counsel, in the closing argument, to violate the rules of practice prescribed for the District Court, as shown by defendant's bill of exceptions, the same being exceptions numbered 2, 3, 4, and 5 in said bill of exceptions.

" 7. The court erred in overruling defendant's motion for new trial, for reasons stated therein."

The District Court properly overruled appellant's demurrer to the evidence. After the counsel for the prosecution had examined a number of witnesses, he announced that he was through with the evidence on the part of the State for the present. Counsel for the appellant demurred to the

evidence introduced by the State, which demurrer was over-ruled by the court. On the trial of any criminal cause, when the facts have been proved which constitute the offence, it devolves upon the accused to establish the facts on which he relies to excuse or justify his acts. Pasc. Dig., art. 1655. The evidence introduced by the State proved that Smith had been killed, in the County of Gonzales, about the time charged in the indictment; and the evidence, although circumstantial, was sufficient to sustain the ruling of the court on the demurrer to the evidence.

After the court overruled the demurrer to the evidence, appellant introduced such witnesses as he desired to examine, and when the evidence was closed the case was submitted to the jury, under instructions from the court. Simply because the county attorney, who, by permission of the court, had entered a *nolle prosequi* as to the defendants William Burt and John House (both of whom had been jointly indicted with appellant, and were competent witnesses), for reasons best known to himself, concluded not to call them as witnesses for the State, is not a matter subject to revision on appeal. Burt and House were both placed upon the stand as witnesses for the appellant, and were examined fully as to the homicide. The appellant got the full benefit of their evidence, and the prosecution is not to blame because appellant saw proper to introduce them as witnesses for the defence.

The next point raised by the bill of exceptions presents the question whether the court committed an error in refusing to permit the witness House to state to the jury what was said to him by James and Houston Powell as to their object in going to the school-house, at any time after he came up with them on their way to the school-house, and prior to the killing of Smith. The county attorney objected to the admission of this evidence, and his objection was sustained by the court. The appellant should have set out in

his bill of exceptions the fact expected to be elicited from the witness, so as to enable this court to determine its materiality. The evidence was properly excluded. The statements called for were declarations of appellant and James Powell, not made at the time of the killing, and therefore no part of the *res gestæ*. The admission of such statements would be to allow defendants to manufacture testimony in their own behalf. *Harmon* v. *The State*, 3 Texas Ct. App. 51; *Robinson* v. *The State*, 3 Texas Ct. App. 256; *Ray* v. *The State*, 4 Texas Ct. App. 450.

The third, fourth, and fifth errors assigned refer to the charge of the court. It is shown by the statement of facts that John A. Smith, at the time of his death, was teaching school in Gonzales County; that James Powell and Houston Powell are brothers. James Powell, on account of some disagreement between him and his father, was living with his brother Houston, with the approbation of his father, and was a pupil of the school taught by Smith. He was at school on the day before Smith was killed, and was severely punished by his teacher for disobeying the rules of the school. On the next day, between the twelve o'clock and afternoon recess, Houston Powell, James Powell, and John House rode up to the school together, hitched their horses, and got down. They stayed out in the play-ground until recess, when they mixed with the scholars. A pistol was seen upon the person of Houston Powell. When the school was dismissed for the day, Smith remained in the school-house; the others who were there (except the parties indicted in this case) left. Soon afterwards four shots were heard in or about the school-house, and Smith was killed. His dead body was found in the school-house. There were two wounds on his body. One of them had entered from the front, near the heart, and passed through, coming out under the shoulder-blade; the other had struck the head from behind, striking the left side of the protuberance at the

juncture of the skull and the spinal column, and passed out on the right side of this protuberance, passing into the head from one to two inches. These wounds were made by pistol or rifle balls. There was but one door to the school-house, and that was in the west end. The dead body was lying about ten feet from the east end of the house, and nearer to the north side.

The theory of the defence is that the killing was in self-defence; that appellant, on the day of the homicide, went to the school-house on a lawful and peaceable mission, to see the teacher in regard to the whipping inflicted by him on James Powell, the day before; and that while appellant was there, conducting himself in a lawful manner, the deceased made a violent assault upon him with a chair; and that if appellant, or another person interfering in his behalf, killed the deceased, it was done to save the life of defendant, or to save him from serious bodily injury.

The court charged the jury on murder in the first degree, murder in the second degree, and manslaughter, defined these offences in the language of the statute, and gave the jury the legal signification of the terms "express malice" and "implied malice." The court further charged the jury on the law of a reasonable doubt, not only upon the general question of the guilt or innocence of the accused, but also as between the different degrees of the offences named in the charge, so as to accord him the full benefit of such a doubt as between the degrees.

The following special instructions were asked by the defendant, viz.:

"1. The jury are instructed that a citizen of this State has a right to defend his person against any unlawful assault, and if the assault be such as to induce a reasonable fear of death or serious bodily injury, he would have the right to kill his assailant, if necessary to his defence; and if you believe from the evidence that the

defendant, or some one interfering in his behalf, killed the deceased while engaged in making such dangerous attack upon defendant, you will acquit him.

" 2. If the jury believe from the evidence that the defendant was conducting himself in a lawful and peaceable manner, and, while so doing, the deceased made a violent and dangerous assault upon him, and in defending himself against such unlawful and violent assault the defendant, or some other person interfering in his behalf, killed the deceased, you will acquit the defendant.

" 3. The State must prove the guilt of the defendant by the witnesses upon the stand, and you cannot presume any fact necessary to such conviction, but must presume the defendant to be innocent until his guilt is shown by the evidence, beyond a reasonable doubt.

" 4. The jury are instructed that, in order to constitute the crime of murder in the first degree, there must not only be a grudge, ill-feeling, or, as the law terms it, ' malice,' but the fact must be shown that, by reason of the ill-feeling, or malice, the defendant deliberately determined to kill the deceased, and then carried that determination into execution."

The court gave all the special instructions asked by the appellant. We believe the charge of the court, taken as a whole, was sufficiently specific, and was a compliance with the requirement of the statute in this respect. Pasc. Dig., art. 3059.

The defendant excepted to all that part of the charge which defines the offence of manslaughter and directs the jury that they may find the defendant guilty of that offence, and defining the punishment therefor, for the reason that said charge was not the law of the case, was not warranted by the evidence, and was calculated to mislead the jury. It is insisted by appellant's counsel, both in their brief and oral argument, that the case, as developed by the evidence,

was either a case of justifiable homicide or one of murder; that if the jury were at all warranted in rejecting the evidence of the State's witnesses, the defendant was guilty of murder or nothing; and that if the testimony of appellant's witnesses is taken into consideration, it shows a case of justifiable homicide; and, therefore, that the charge in reference to manslaughter was erroneous, and should not have been given.

It has frequently been held by this court that when the proof shows a case either of murder or justifiable homicide, it would be erroneous for the district judge to charge upon manslaughter, and that his refusal to give an instruction on manslaughter, when asked in such case, would not be a good ground for reversal of the judgment. And this ruling is sustained by abundant authority. This court has never held, and the learned counsel for appellant have cited no case where it has been decided, that a judgment should be reversed because the court gave the defendant the benefit of a charge on a less offence than the evidence showed he was guilty of. There is an admitted distinction between murder in the second degree and manslaughter, in this State. In the one, malice is a necessary ingredient; in the other, it is wanting. In one, the crime is attributed to a wicked, depraved, malignant spirit; in the other, it is imputed by the benignity of the law to human infirmity. If, for instance, one person intentionally kills another suddenly, in the heat of passion, without any legal provocation sufficient to reduce the homicide to manslaughter, or to justify or excuse the killing, the offence is murder in the second degree. On the other hand, if death ensues from a sudden transport of passion or heat of blood, upon a sufficient provocation, it is considered as amounting only to manslaughter.

This being the case, to draw an unerring line, pointing with undeviating certainty to the grade of the offence committed, upon a given state of facts, in all cases, would baffle

the skill of the most eminent jurist; and an attempt to do this would often defeat the ends of justice. The fact that the jury, after finding the defendant guilty of manslaughter, assessed the highest penalty affixed to that offence, satisfies us that the defendant was not injured by that part of the charge on manslaughter which was excepted to by appellant. Courts are not disposed to disturb verdicts because the charge was too favorable to the defendant, or because juries, in consequence of mitigating circumstances in the evidence, are unwilling to expose defendants to the full penalties of the law. The charge of the court sufficiently defined the offence of manslaughter.

It is contended that counsel for the prosecution violated certain rules of practice in his closing speech to the jury, and that too much latitude was allowed him by the court in this regard, over the objections of appellant. These errors are specifically set out in a bill of exceptions. It is the duty of the presiding judge to see that counsel confine their argument to the evidence and to the argument of opposing counsel. The presiding judge has some discretion in such cases; and we must give the jury credit for some common sense, and believe that they will look to the charge of the court, rather than to the statement of counsel, for the law. In this case it does not appear that any legal right of the appellant was invaded.

After a careful examination of the entire record, we believe that appellant had an impartial trial, and was well defended, and we see nothing that would authorize us to reverse the judgment. It is, therefore, affirmed.

*Affirmed.*